IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHERYL L. GOODSPEED | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No:07-CV-01809 (RWR) |
| | : |
| THE PRUDENTIAL INSURANCE COMPANY | : |
| OF AMERICA, | : |
| | : |
| and | : |
| | : |
| INSIGHT ENTERPRISES, INC. LONG TERM | : |
| DISABILITY PLAN | : |
| | : |
| Defendants. | : |

**PLAINTIFF'S MOTION TO DETERMINE STANDARD OF REVIEW**

Plaintiff, by and through counsel, in accordance with Federal Rules of Civil Procedure

hereby moves this Court to determine the standard of review under which this matter is to be

reviewed.

Plaintiff's position are summarized in the attached supporting memorandum.

Respectfully submitted,


_____/s/_____
Scott B. Elkind, DC BAR No.43811
Elkind & Shea
801 Roeder Rd., Ste. 550
Silver Spring, MD 20910
(301) 495-6665
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHERYL L. GOODSPEED | : |
| | : |
|      Plaintiff, | : |
| | : |
| v. | : Civil Action No:07-CV-01809 (RWR) |
| | : |
| THE PRUDENTIAL INSURANCE COMPANY | : |
| OF AMERICA, | : |
| | : |
| and | : |
| | : |
| INSIGHT ENTERPRISES, INC. LONG TERM | : |
| DISABILITY PLAN | : |
| | : |
|      Defendants. | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO DETERMINE STANDARD OF REVIEW**

**FACTS:**

Plaintiff seeks relief under ERISA,  29 U.S.C. § 1001, et seq., specifically ERISA

§502, 29 U.S.C. § 1132 in requesting that this court rule that Defendants have issued a wrongful

denial of long term disability benefits.

Plaintiff was a plan participant under a group benefits plan established by Insight

Enterprises, Inc. (Hereinafter, "Insight")

Insight contracted with the Prudential Insurance Company of America  (Hereinafter,

"Prudential") to act as the claims administrator and insurer for the plan.

Prudential has made all of the decisions  regarding plaintiff's claim for disability benefits

in this case.

Pertinent plan definitions include the following:

1

Your are disabled when Prudential determines that:

- you are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and

- you have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.  (PRU 1774)

The initial summary statement for the Plan entitled "**Benefit Highlights**" (PRU 1755 - 6) concludes with the statement: "**The above items are only highlights of your coverage.  For a full description please read this entire Group Insurance Certificate.**" (emphasis as in original).

The Plan "Certificate of Coverage" specifically states the following:

**Does This Certificate Address Any Rights to Other Benefits or Affect Your Employment with Your Employer?**

This certificate sets forth only terms and conditions for coverage and receipt of benefits for Long Term Disability.  It does not address and does not confer any rights, or take away any rights, if any, to other benefits or employment with your Employer. Your rights, if any, to other benefits or employment are solely determined by your Employer.  Prudential plays no role in determining, interpreting, or applying any such rights that may or may not exist. (PRU 1762)

The Summary Plan Description (1798 - 1802) at the end of the Group Policy contains a discretionary clause.  Unfortunately, it is preceded on the previous page (PRU 1797) by the following statement: "**The Summary Plan Description is not part of the Group Insurance Certificate.**"

The Insight Enterprises Plan lists the code number "8500" on each page of the plan withe

2

the obvious exceptions of the exclusionary language page PRU 1796) and the Summary Plan

Description (PRU 1797 - 1802) with the code number "83500" starting again on the Group

Insurance Contract Page following afterwards (PRU 1805 - 15).

**ARGUMENT**

<u>Plaintiff's Counsel Has Discovered That the Additional Plan Language Has Not Been Present in</u>
<u>Other Cases.</u>

      The Defense counsel and current Plaintiff's counsel have been involved in two other

disability benefits cases involving the same contractual language.  The first case is *Carroll v.*

*Prudential Insurance et al*, PJM 05-1472, in the United States District Court of Maryland,

Southern Division. (Attached hereto as Exhibit No. 1).   The second case is ongoing in this Court

in the matter of *Doley v. Prudential Insurance Company of America,* before Judge Roberts, Civ.

No. 05-0277.

      Prior to argument in the *Carroll*, *supra*, Plaintiff's counsel was able to obtain an original,

bound "Group Insurance Contract" issued to the Plaintiff, Kathleen Carroll (as noted in her

affidavit attached hereto as Exhibit 2).  This contract included the same language for determining

disability, but did not include an "ERISA Statement"[1] at the end of the contract.

      The oral argument in *Carroll* was held on 1/8/07 after the filing of Appellant's Brief in

*Doley* in the United States Circuit Court of the District of Columbia in this case.  Following the

discovery of the missing "ERISA STATEMENT" in the pertinent contract in *Carroll*, this

---

[1]The "ERISA STATEMENT" in Carroll is nearly identical to the "Summary Plan
Description" in this case and tacked on the end of the Group Plan in the exact same fashion.

3

counsel undertook the same inquiry in the *Doley* matter.[2]  As it turns out, Ms. Doley had independently acquired a copy of her long term disability contract from her employer prior to consulting with this counsel. (See Affidavit of Evaline Doley also attached hereto as Exhibit No. 3).  As it turns out, the original Prudential long term disability policy delivered to Doley fails to include an "ERISA STATEMENT."

Recently, counsel has obtained yet another copy of a Prudential Plan for Claimant, Mary Woody[3] which is a bound copy and does not contain an "ERISA STATEMENT" (Affidavit and Copy of Example Policy attached hereto as combined Exhibits No. 4)[4]

Judge Robertson ruled in *Doley v. Prudential Insurance Company of America*, 2008 WL 131192 (D.D.C.) that Prudential's inability to account for the discrepancies between the two proffered sets of plans  resulted in a finding that the *de novo* standard of review should be applied as the absence of the "ERISA STATEMENT" was fatal to Prudential's claim for discretionary review.

Unfortunately, in this matter, the Claimant did not receive an original, bound copy of the Prudential Plan.  Therefore, a request to permit discovery for this limited purpose is made at this time to clarify this issue.

The *De Novo* Standard of Review Should Be Applied.

*Defendants Improperly Rely Upon a "Summary Plan Description" Added After the Group Policy.*

---

[2]The "ERISA STATEMENT" in Carroll is nearly identical to the "Summary Plan Description" in this case and tacked on the end of the Group Plan in the exact same fashion.

[3]Ms. Woody's claim appeal was denied on 2/18/08 with the decision received this day.

[4]Counsel will proffer the original, bound copy to the Court, if necessary.

4

As Judge Robertson's analysis in *Doley* turned upon the presence/absence of the additional Plan language, the actual language within the plan was not addressed.

Other courts, though, have specifically addressed this exact plan language. This specific exclusion has been held in the literal sense to exclude the discretionary clause and the *de novo* standard of review applied. *Olson v. Comfort Systems USA Short Term Disability Plan*, 2005 U.S.Dist. LEXIS 37923 (W.D. Wisc. 2005); *Schwartz v. The Prudential Ins. Co. of Am.*, 2006 U.S.App.LEXIS 14387 (June 13, 2006).

This argument is strengthened by the express language in the "Certificate of Coverage" language. The Plan "Certificate of Coverage" specifically states the following:

> **Does This Certificate Address Any Rights to Other Benefits or Affect Your Employment with Your Employer?**
> **This certificate sets forth only terms and conditions for coverage and receipt of benefits for Long Term Disability**. It does not address and does not confer any rights, or take away any rights, if any, to other benefits or employment with your Employer. Your rights, if any, to other benefits or employment are solely determined by your Employer. Prudential plays no role in determining, interpreting, or applying any such rights that may or may not exist. (PRU 1762)(emphasis added)

Only at the end of the Group Policy is there a discretionary clause. This is contained is the "Summary Plan Description" (PRU 1797) Unfortunately, it is preceded on the previous page (1796) by the following statement: "**The Summary Plan Description is not part of the Group Insurance Certificate**."

Again, factually and literally, the Summary Plan Description is excluded from the Group Insurance Certificate. This is done not once, but twice. Therefore, the exclusion of the Summary Plan Description excludes the discretionary language resulting in the application of the *de novo* standard of review.

5

Additional legal authority points to the same conclusion. An auxiliary document such as this summary plan document has not independent authority to expand upon or create powers independent of the plan itself. *Diaz v.Prudential*, 424 F.3d 635 (7th Cir. 2005); following in *Hopkins v. Prudential Ins. Co. of Am.*, 2006 WL 1343432 (N.D.Ill. May 12, 2006).

In general, terms contained in a summary cannot prevail over conflicting terms in a benefit plan. *Olson v. Comfort Systems USA Short Term Disability Plan*, 2005 U.S.Dist. LEXIS 37923, *1007 (W.D. Wisc. 2005) citing *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703 (7th Cir. 1999) among many other district court decisions.

Where a summary plan description (SPD) conflicts with a benefit plan, the SPD may be treated as amending a plan to the extent that it creates **additional** benefits or coverage for plan participants only. *Cherry v. Biomedical Applications of Pennsylvania, Inc.*, 397 F. Supp.2d 609, 615 (E.D.Pa. 2005) citing *Burstein v. Retirement Account Plan for Employees of Alleghany Health Education and Research Foundation*, 334 F.3d 365, 368 (3d Cir. 2003). The ERISA STATEMENT in this matter constitutes an SPD, but is preceded by a page specifically excluding it from the policy. The intent of the insurer is clear that Summary Plan Description language cannot be utilized to invoke discretionary review. To read otherwise would contradict a plain reading of the documents issued by the insurer itself.

Where the plan fails to incorporate by reference an SPD which affords discretion, the standard of review is *de novo*. *Sperandeo v. Lorillard Tobacco Co.*, 460 F.3d 866, 872 (7th Cir. 2006) citing *Schwartz v. Prudential Ins. Co. of Am.*, 450 F.3d 697 (7th Cir. 2006)(holding that a plan administrator cannot rely on an extra-plan document to expand its discretion when the plan itself bestows no such discretion) citing, *infra*, *Shaw v. Connecticut Gen. Life Insur. Co.*, 353

6

F.3d 1276 (11th Cir. 2003); *Grosz-Solomon v. Paul Revere Life Insur. Co.*, 237 F.3d 1154 (9th Cir. 2001).

In this case, there is no incorporating reference, but rather, two exclusionary statements. Therefore, the Summary Plan Description language cannot be utilized to afford discretionary review within the Group Certificate.

*There May Be No ERISA Statement in the Plan Issued to Goodspeed.*

The evidence obtained in the *Carroll*, *Doley*, and the current Woody administrative appeal all demonstrate that Prudential is supplying a bound policy to the insured initially. But, when a claim occurs, Prudential attaches an additional "ERISA STATEMENT." For this reason, Plaintiff requests limited discovery initially to discover the original bound copy of the original, bound (stapled) copy of the Group Certificate.

*There Is No Express Grant of Discretion in the Group Insurance Certificate Comprising the Plan.*

The decennial case of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) held that *de novo* review is appropriate unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See Also*, *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1452 - 4 (DCCir.1992). There is nothing inherent in the status of an ERISA fiduciary that requires a court to defer to the determination of the fiduciary either on questions of plan interpretations or factual determinations. *Firestone*, *supra*; *See Also*, *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 386, 122 S.Ct. 2151, 2170, 153 L.Ed.2d 375, 402 (2002). Based on these holdings, the burden is on Prudential to prove that the Plan contains an unambiguous grant of discretion that is

"on its face, manifest[s] a clear and unequivocal intention to commit a matter to an administrator's discretion." *Martin v. Masco Industries*, 747 F.Supp.1150, 1152 (W.D.Pa. 1990).

Although no "magic words" are required, the plan must give a fiduciary the "power to construe disputed or doubtful terms or to resolve disputes over benefits eligibility." *Block*, *supra*, at 1454. Specifically, a plan that merely allocates decision-making responsibility is not enough to confer discretionary authority. *Ingram v. Martin v. Long-Term Disability Income Plan for Salaried Employees of Transferred GE Operations*, 244 F.3d 1109, 1112 - 3 (9th Cir. 2001).

Should any ambiguity be present, the doctrine of *contra preferentum* will be applied which requires that the terms of the contract be interpreted against the drafter. *Fitts v. Federal Nat'l. Mort. Assoc.*, 191 F.Supp.2d 67 (D.D.C. 2002) citing *Germany v. Operating Eng'rs Trust Fund*, 789 F. Supp. 1165, 1170 (D.D.C. 1992). The holding in *Germany* held specifically that:

> Insurance policies are almost always drafted by specialists employed by the insurer. In light of the drafter's expertise and experience, the insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence. *Id*. at 1169 citing *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990).

For this reason, the phrase "when Prudential determines" does not confer discretion of the

plan since it is not a "clear grant of discretion" as required under *Firestone Tire & Rubber Co. v. Bruch*, 498 U.S. 101, 115 (1989).

It has been similarly held that although no specific phrases or terms are required to confer

this discretionary authority, the plan's intention to do so "must be clear."  *Gallagher v. Reliance Stand. Life Ins. Co.*, 305 F.3d 264,  268 -9 (4th Cir. 2002).  To this end, any ambiguity in an ERISA plan is construed against the drafter of the plan, and it is construed in accordance with the **reasonable expectations of the insured**."  *Id.* at 269 quoting *Bynum v. Cigna Healthcare of North Carolina, Inc.*, 287 F.3d 305, 313 - 4 (4th Cir. 2002)(emphasis added).  Put simply, if a plan does not does not clearly grant discretion to interpret the plan, then no deference is given to the plan administrator's decisions and the standard is *de novo*.  *Id.*; cumulatively cited in *Neumann v. Prudential Insurance Co. of Am.*, 367 F. Supp.2d 969, 974 (E.D.Va. 2005).

Since the Plan fails to set forth an express grant of discretion which is actually incorporated in the Certificate of Insurance, the *de novo* standard of review should be applied. *The Plan Language Contains an Ambiguity Which Does Not Confer Discretion.*

There are many case holdings upholding the premise that ambiguous plan language does not confer discretion.  It was held in *Diaz v. The Prudential Insurance Company of America*, 424 F.3d 635 (7th Cir. 2005) that the ambiguous phrase "satisfactory to us" set forth in a Prudential Plan does not allow the insurer to vest itself with discretion.  The holding in *Diaz* stated succinctly that such language does not "alert the plan participant to the possibility that Prudential has the power to re-define the entire concept of disability...on a case by case basis." *Id.* at 639 This holding went on to cite *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) which states: "If a plan 'is going to reserve a broad, unchanneled discretion to deny claims, [plan participants] should be told this, and told clearly'" *Id*.

The *Diaz* decision holding that the phrase that proof "satisfactory to us" is ambiguous and does not confer discretion has been upheld in *Lauth v. Prudential Insur. Co. of Am.*, 2005

9

U.S.Dist.LEXIS 17628 (N.D.Ill.  July 1, 2005); *Olson v. Comfort Systems USA Short Term Disability Plan, et al.*, —F.Supp.2d — , 2005 WL 3578771 (W.D. Wisc. December 30, 2005); *Perez  v. Cozen & O'Connor Group Long Term Disability Coverage*, 2005 WL 3116753 (S.D. Cal. November 3, 2005).

The specific plan language utilizing the phrase "when Prudential determines" was specifically addressed in *Neumann v. Prudential Insurance Co. Of Am.*, 367 F. Supp.2d 969 (E.D.Va. 2005). The *Neumann* case involved identical plan language stating "When Prudential determines" disability for a beneficiary.  This language was deemed ambiguous by the court who undertook an analysis of the plain language, ultimately concluding that this language did not confer discretion.

The plain meaning of "to determine" is "to settle or decide (a dispute, question, matter in debate) as a judge or arbiter."  *See* 4 Oxford English Dictionary 550 (2d ed. 1989).  This gives Prudential the authority only to make a *decision*, not that it is vested with *discretion* which is the determinative word for invoking abuse of discretion review.  To this end, the mere conferring of authority to decide eligibility does "not plainly delegate "final authority' to do so."  *Neumann* Decision at 5 citing *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 52 3 (4th Cir. 2000).  For this reason, the phrase "when Prudential determines" should be deemed ambiguous and a *de novo* review standard applied in this matter.

The *Neumann* decision again implements much of the preceding authority from other courts.  This exact or similarly ambiguous language has been held to **not clearly indicate** that discretion was retained by the Plan administrators on many occasions.  *Loban v. Prudential Insurance Company of America*, 2008 WL 41070 (C.A. 9 (Cal.) January 2, 2008);  *Dickerson v.*

*Prudential Insurance Company of America*, 497 F.Supp.2d 251 (D.Mass. 2007); *Alexander v. Winthrop, Stimson, Putnam and Roberts Long Term Disability Coverage, et al.* 497 F.Supp.2d 429 (E.D.N.Y. 2007); *White v. Coblentz, Patch, Duffy and Bass, LLP Long Term Disability Plan*, 2007 WL 1462393 (N.D.Cal. May 18, 2007); *Reardon v. The Prudential Insurance Company of America*, 2007 WL 894475 (S.D.Ohio March 21, 2007); *Gingras v. Prudential Ins. Co. of America*, 2007 WL 1052500 (N.D.Ill. April 4, 2007); *Reardon v. The Prudential Ins. of Am.*, 2007 WL 894475 (S.D. Ohio March 21, 2007); *Anderson v. Altius Health Plans, Inc.*, 2007 W: 128961 (D.Utah January, 12, 2007); *Kelly v. Prudential Ins. Co. of America*, 2006 WL 2037454 (D.Or. July 18, 2006); *Schwartz v. Prudential Ins. Co. of Am.*, 450 F.3d 697 (7th Cir. 2006); *Calmbacher v. Prudential Ins. Co. of Am.*, 392 F. Supp.2d 1364, 1369 (M.D.Fl. 2005); *Heinrich v. Prudential Ins. Co. of Am.*, 2005 U.S.Dist.LEXIS 15566 (N.D.Cal. July 29, 2005) 2005 WL 1868179 at *7 (N.D. Cal. July 29, 2005) citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999); *Flores v. Prudential Ins. Co. of Am.*, 2004 WL 2075448 (N.D.Cal. September 16, 2004); *Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1113 (9th Cir. 2001)["It is not difficult to write, 'The plan administrator has discretionary authority to grant or deny benefits under the plan.'"]; *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 108 - 9 (2nd Cir. 2005); *Ehrman v. Henkel Corp. Long-Term Disability Plan*, 194 F.Supp.2d 813, 818 (C.D.Ill. 2002) citing *Herzberger v. Standard Ins. Co.*, 205 F.3d, 327, 331 (7th Cir. 2000); *Deal v. Prudential Ins. Co. of Am.*, 222 F.Supp. 2d 1067, 1070 (N.D.Ill. 2002); *Johnson v. Prudential Ins. Co. of Am.*, 205 F.3d 327 (7th Cir. 2000); *McDonald v. the Timberland Co. Group LTD Disability Coverage Program and the Prudential Ins. Co. of Am.*, 2002 WL 122382, at *2 (D.N.H.); *Deal v. Prudential Ins. Co. of Am.*, 222 F.Supp.2d 1067, 1069 (N.D. Ill. 2002),

*Rothstein v. Prudential Life Ins. Co.*, No. CV0011329SVWAIJX, 2001 WL 7933130, at *2-3 (C.D.Cal. July 10, 2001); *O'Sullivan v. Prudential Ins. Co. of Am.*, No. 00 Civ. 7915(KNF), 2001 WL 727033, at *3 - 4 (S.D.N.Y. June 28, 2001) also citing *Hertzberger*, *infra*.; *See Also*, *Clapp v. Citibank, N.A.*, 262 F.35 820, 823 (8th Cir. 2001); *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1259 (10th Cir. 1998); *Hubert v. Prudential Ins. Co.*, 197 U.S.App.LEXIS 434 (10th Cir. 1997).

Judge Peter J. Messitte in *Carroll v. Prudential Insurance Company of America, et al*, PJM 05-1472 issued a similar ruling, embracing the findings in *Neumann* and *Herzberger*, holding that the phrase "when Prudential determines" does not clearly vest discretion in the administrator and was subject to the rule of *contra preferentuam* with this language construed against the drafter, Prudential.  (Decision at 3 - 5).  By this reasoning the *de novo* standard of review was to be applied (Decision at 6).   Plaintiff again urges this Court to adopt the same reasoning and apply the *de novo* standard of review in this case following this clear reasoning as opposed to the subsequent finding in *Woods v. The Prudential Insurance Company of America*, 2007 WL 1655339 (E.D.Va. June 6, 2007)(currently slated for argument before the United States Circuit Court of Appeals for the Fourth Circuit) which disagreed with the reasoning in *Neumann*, calling it "somewhat tautological."  *Id.* at *6.

Plaintiff also urges this Court to adopt the cogent holding set forth in *Marquez-Massas v. Squibb Mfg., Inc. (& Prudential),* 344 F.Supp.2d 315, 323 (D.P.R. 2004), reading as follows:

> ...the aforementioned provisions do not denote any degree of discretion in the interpretation or evaluation of the claim.  Rather, Prudential's role thereunder is limited to the ministerial function of **receiving and processing the notice of claim and proof of loss and submitting claimant to medical evaluations.** (emphasis added)

12

A correlative ruling has occurred in *Lehman v. Unum Life Insur. Co. of Am.*, 2006 WL 2792852, *8 (W.D.Wis. September 26, 2006) in which the language "when Unum determines" was determined to be insufficient to confer discretionary authority.

In the same vein, an insurer's requiring "proof of eligibility" has been found to be ambiguous and not afforded discretion. *Fitts v. Federal National Mortgage Assoc.*, 236 F.3d 1, 344 U.S.App.D.C. 310, 314, FN3 (2001).

This position is best summarized by a quote heard by one of the Justices in the Circuit Court of Appeals for the District of Columbia during argument in this matter, who loudly stated to defense counsel: "ERISA was not meant to be this difficult." This counsel shares this sentiment. If Prudential wanted discretionary authority, they could have set forth a simple sentence in the body of the Group Insurance Certificate as all other companies do. Instead, Prudential has engaged in a game of "hide the ball" and should not be allowed to reap a benefit and be allowed to benefit from discretionary review as a result of such disingenuous activity.

**CONCLUSION:**

Based on the extensive authority provided, the *de novo* standard of review should be applied.

WHEREFORE, Plaintiff requests that this Court rule that the *de novo* standard of review should be applied in this case, or, in the alternative, to allow minimal discovery to obtain an original, bound (stapled) copy of the Group Certificate of Insurance to verify if the language is additional Summary Plan Description was actually ever included as part of the original Group Certificate.

**REQUEST FOR ORAL ARGUMENT**

Plaintiff hereby requests oral argument on all issues raised herein.

Respectfully submitted,

_____/s/_____
Scott B. Elkind, DC BAR No.43811
Elkind & Shea
801 Roeder Rd., Ste. 550
Silver Spring, MD 20910
(301) 495-6665
Counsel for Plaintiff

010807opinion

1

```
1              UNITED STATES DISTRICT COURT
                   DISTRICT OF MARYLAND
2        ,          SOUTHERN DIVISION

3    KATHLEEN CARROLL              .
                                   .
4           vs.                    .   PJM-05-1472
                                   .
5    PRUDENTIAL INSURANCE          .   GREENBELT, MARYLAND
     MCARDLE PRINTING              .
6    DEFENDANTS                    .   JANUARY 8, 2007

7

8                       TRANSCRIPT OF RULING
             BEFORE THE HONORABLE PETER J. MESSITTE
9                 UNITED STATES DISTRICT JUDGE

10

11   A P P E A R A N C E S:

12   FOR THE PLAINTIFF:

13   SCOTT B. ELKIND, ESQ.

14

15   FOR THE DEFENDANTS:

16   DAVID A. SELTZER, ESQ.

17

18

19

20   Court Reporter:           Sharon O'Neill, RMR
                               Official Court Reporter
21                             United States District Court
                               6500 Cherrywood Lane - RM 200
22                             Greenbelt, Maryland 20770
                               Tel. 301-344-3227
23

24

25
```

2

```
1              The Plaintiff, Ms. Carroll, has filed a case in

2    this Court and seeks first to have the Court apply a de novo

3    standard to the decision of the Claims Administrator.  The
```
                              Page 1

Add. 1

010807opinion

4    Claims Administrtor argues that it is entitled to apply

5    either A, an abuse of discretion standard or a modified abuse

6    of discretion standard.

7        It is true that with regard to benefit plans that

8    confer discretionary authority on their administrators that

9    there is an abuse of discretion standard. If it is, then the

10    Court to -- if discretion is applied then there is to be the

11    abuse of discretion standard.

12        There is a threshold question the Court has to

13    decide, of course, whether the plan does vest discretion in the

14    administrator or whether it's something in the plan itself.

15    The fall back is that if the plan is both funded and

16    administered by the same entity, as it is here, Prudential,

17    then a lessened standard of abuse of discretion would apply.

18    Still abuse of discretion, but according to a sliding scale.

19    This affect Ellis v. Metro Life 126 F3d 228, particularly at

20    page 233. The Court under that standard would not disturb the

21    decision if reasonable, even if the Court might come to a

22    different conclusion.

23        The Court also said with regard to determining

24    whether there is discretion vested in the administrator, there

25    are no magic words that are required to trigger the

D                                                           3

1    application. The Court simply needs to determine whether given

2    that there is power given to the administrator to use its

3    discretion. If there is a clear intention to do that, then in

4    fact the Court must respect it. The clear intention concept is

5    cited in, among other cases, Feder vs Paul Revere Life

6    Insurance Company 228 F3d, 518, at 522, 23. Fourth Circuit

7    case from 2000.

Page 2

010807opinion

8          As I have said, if there is no clear discretion
9     vested in the administrator, then the de novo standard applies
10    and the court reviews the case just as if it were acting on the
11    claim on a clean slate.

12          Now, the key language here in the plan is that when
13    Prudential determines that there is effectively a disability,
14    it may make decisions regarding the disability according to its
15    discretion.  The key word is "when Prudential determines", and
16    Prudential and McArdle argue that this shows clear intention to
17    ·  delegate final authority to Prudential to settle disputed
18    health claim questions.  And there are cases that have so
19    decided.  Judge Blake of this Court in Machovec vs. Prudential
20    Insurance Company, case number CCB 03-1920, which appears at
21    2004 U.S. District Court, held to that effect.  She really
22    applies no analysis to that finding.  She simply agrees with
23    the prior decision of the Virginia Federal Judge that says that
24    that applies.

25          A more recent, and frankly better reasoned opinion,


▯                                                                    4


1     came from Judge Ellis of the Eastern District of Virginia, in
2     the case of Newmann vs. Prudential Insurance Company, which is
3     reported at 367 F.Supp 2d, 969, a 2005 case.  And that Judge
4     Ellis relies on a case from the Seventh Circuit by Judge Posner
5     in Herzberger vs. Standard Insurance 205 F3d 327, Seventh
6     Circuit case from 2002.  That is what Judge Ellis says in
7     analyzing the words "Prudential determines."  This is what he
8     says, at the Lexis citation at page 12: "In sum, the plain
9     meaning of the phrase Prudential determines, is that
10    Prudential, considering the evidence presented by a Plan
11    participant, must decide whether the participant is eligible
Page 3

Add. 3

010807opinion

12    for benefits under the terms of the Plan; it does not imply
13    discretion or warrant abuse of discretion review. And because
14    the phrase's meaning is unambiguous, no further analysis is
15    necessary. But even assuming the phrase is ambiguous, the same
16    result obtains because the phrase must then be construed
17    against the drafter of the Plan and in accordance with the
18    reasonable expectation of the insured that a denial of benefits
19    of the plan will be reviewed de novo in Federal Court."
20            The Court agrees with Judge Ellis that this is, the
21    meaning of "determines" is not clearly language that vests
22    discretion in the administrator, nor -- and the Court disagees
23    with defense counsel's suggestion that there is no rule of
24    contractum pro grantum (phonetic) in this case. There is in
25    the State of Maryland a rule that in the absence of clear

0                                                          5

1    language saying that the insurance contract words will not be
2    construed again the party, that the contractual language is
3    construed against the party who prepares the contract, Truck
4    Insurance Exchange vs. Marks Rentals, Inc. at 288 Maryland a
5    28, 1980 case from the Maryland Court of Appeals.
6            So there is good reason to believe that in this case
7    there is no vested discretion. There is a side line to this
8    and that is that, and I'll come back to this momentarily, that
9    with regard to the plan summary that's presented, that was
10   presented to Ms. Carroll in this case, apparently the language
11   of ERISA that says, that supposedly accompanied the plan
12   summary when she got it, says that -- but in any event it
13   suggested in the language that said this is not part of the
14   ERISA, not part of the contract, that this is effectively
15   something that vests discretion again in the plan
                        Page 4

Add. 4

010807opinion

16    administrator, the plan claims administrator.

17          Ms. Carroll said she did not get that language

18    accompanying her plan description. Defense counsel is unable

19    to say whether or not she did. When we come to the issue of

20    whether documents were timely prepared, supplied, excuse me,

21    there was a letter dated February 13, 2004 in response to

22    Plaintiff's counsel's request for documents when he asked for,

23    among other things, the plan documents and was told "Please

24    refer your request for any plan information to the policy

25    holder directly," meaning McArdle. Well, what she's got is


0                                                                    6


1    something that doesn't say anything about this language of

2    ERISA vesting discretion in the claims administrator. That's a

3    side line.

4          The plain meaning of the statute, of the language of

5    the plan itself, seems to me to not vest discretion in, and any

6    ambiguity would be against Prudential and therefore the

7    appropriate standard of review would be de novo. I say that

8    because I say even parenthetically should be at most a sliding

9    adjusted abuse of discretion standard applies. I think that

10   was abused in this case, but we'll come back and first analyze

11   the de novo standard points and then from abuse of discretion

12   sliding standard basis.

13         With all the evidence that comes in here, first and

14   foremost, the Court finds it quite surprising, although not

15   absolutely required in every case, there was no independent

16   actual medical evaluation made of this plaintiff. Now,

17   certainly, there are cases where these cases can be decided

18   without any reference to medical examination. This was a case

19   where a woman had multiple surgeries, who was making extensive

Page 5

Add. 5

20    complaints based upon subjective pain. At least this evidence

21    of subjective pain was reported by various physicians, and the

22    defendant really was never in a position to evaluate the

23    credibility of those claims because they never, she was never

24    simply interviewed by them, by any kind of medical personnel.

25            Beyond that, there was no medical exam at all that

o                                                                7

1    was conducted by the defendant in this case to verify whether

2    or not there were, there was a valid claim obtained.

3            The Court finds really no full evaluation of the

4    medical regimen, excuse me, the medication regimen that the

5    defendant was on. She is taking pain killers, obviously, and

6    there was a bit of a menu of drugs that suggested by counsel in

7    argument and the effect of taking those drugs would have to

8    control her pain was never really evaluated by the defendant.

9            One of the things that remains totally open here is

10    whether she would have been required to take more medication in

11    order to accommodate her work needs, as opposed to less if she

12    weren't working at all. And that's really -- I don't know

13    that -- I do know that the defendant is able to say "well, if

14    you continue to take drugs up to a certain point more than you

15    might ordinarily take in order to keep working, we are entitled

16    to insist upon that." Seems to me that without doing a careful

17    pharmaceutical analysis of the other diagnosis, that the

18    defendant is not in a position to say take the pain killers and

19    whatever you need to keep working.

20            The defendant says that the plaintiff had to come in

21    and see whether she could be accommodated by working at

22    different levels which was offered by the defendant and because

23    she did not come in to try to see whether she would could work

Page 6

Add. 6

010807opinion

24    reasonably within this so called accommodation that she somehow
25    should be faulted.  Certainly her claim was that "I can't work

0                                                              8

1    at all," and the defendant's claim was "Yes, you can, but let's
2    see what can you do."
3            The most persuasive argument that was made by
4    plaintiff's counsel today is whether she is working 90 percent
5    of time or 80 percent of the time or 75 percent of the time,
6    the pain issues are still there.  They're just not there a
7    hundred percent of the time.  When she is working they are
8    there whatever percentage of the time that she's working.  But,
9    again, the defendant really is not in a position to evaluate
10   the extent to which that pain is bona fide because they never
11   had her examined.  And I say this now on the basis not only of
12   the de novo standard of review, but I think on the basis of
13   modified abuse of discretion standard, that somehow some kind
14   of interview should have been held, medical interview with the
15   plaintiff to determine the extent to which her complaints of
16   pain were in fact verified.
17           The Court would also agree with plaintiff's counsel
18   that there was to some extent objective verification of her
19   complaints of pain that would seem to me to take her out of any
20   possible exception of the policy that she would be relegated to
21   no particular entitlement to benefits if she was relying
22   entirely on self-reported pain.  This was self-reported pain
23   that could at least to some extent be objectively verified.
24   The defendant never tried to objectively verify these things,
25   but took language at different points from reports of

0                                                              9

Add. 7

010807opinion

1    plaintiff's medical personnel and came to conclusions based
2    upon that.
3            The Court is satisfied, as I say again, that in
4    deciding this case de novo or deciding it on a modify abuse of
5    discretion standard that the denial of benefits in this case
6    was wrong.
7            Now, I say that and I also want to make a specific
8    statement about the failure to provide documents in this case.
9    The statute in this case, not a Code or Federal Regulation, but
10   under 29 U.S.C. section 1024 part B4, says the administrator
11   shall upon written request of any participant or beneficiary,
12   furnish a copy of the latest updated summary plan description
13   and the latest annual report, and in term or in part the
14   bargaining agreement, the trust agreement, contract or other --
15   -- under which the plan is established or operated. The
16   administrator may make a reasonable charge to cover the cost of
17   furnishing such copies.
18           Now, this is a statute, not a reg, and this is a case
19   where when the request was made pursuant to a letter from
20   counsel for plaintiff the response was not in compliance with
21   the statute. Mr. Elkind, tell me again where your letter
22   appears.
23           MR. ELKIND: Yes. One moment, Your Honor. The
24   letter appears at Prudential 273, dated January 30, 2004.
25           THE COURT: The letter was sent on January 30, 2004

0                                                          10

1    to Melanie Covington (phonetic) at Prudential's office in
2    Philadelphia. Please provide me with the follows documents,
3    copy of the entire claims file and relating or referring to the

Page 8

Add. 8

010807opinion

4      claim, number one.  Number two, true and correct copy of the
5      plan document.  Number three, a true and correct copy of the --
6      Number four, a true and correct copy of all SPD issued by the
7      plan since 1999.  A true and correct copy of all claims
8      proceedings intended to be filed, used or referred to during
9      the course of the review.  Six, all other writings which you
10     contend relate to the review.

11            Now, the response that was given was by letter dated
12     February 11, February 13, 2004 and it says "we are in
13     receipt -- this is from May I. Gellagel (phonetic) and she is
14     writing from Philadelphia to Mr. Elkind -- "we are in receipt
15     of your request for documentation regarding Kathleen Carroll
16     and her authorization to release medical documentation to you
17     office.  Enclosed is a complete copy of all the documents
18     contained in Ms. Carroll's file and used in the determination
19     on her claim."

20            Now, skipping to the next paragraph, "Your letter
21     also requests plan documents.  G 75534 was issued to McArdle
22     Printing Company, Inc.  Please refer your request for any plan
23     informatoin to the policy holder directly."  That's directly in
24     violation of the statute.

25            The administrator in this case was Prudential.  They

0                                                                      11

1      were required to provide the plan requested, particularly where
2      here there appears to be a discrepancy between the plan that
3      they are now relying on in terms of establishing the
4      appropriate standard of review and the plan that was in fact
5      distributed to her by her employer.  Well, that issue still
6      remains open.  But there is no basis to say, as Ms. Gelagel
7      said in her letter of February 13, 2004, talk to your plan

Page 9

Add. 9

010807opinion

8   administrator.  An insured under the plan is not required to
9   chase around for plan documents.
10          This is a fiduciary duty Prudential has.  They're to
11  have those documents in hand.  They are to supply them when
12  requested.  They may charge appropriately, but they may not say
13  talk to somebody else.  And clearly in that view, in my view a
14  violation of the statute which does result in an appropriate
15  assessment.
16          I'm going to order $1,500 to the plaintiff on that
17  part of the claim alone for the failure, only as to the plan
18  documents.  I'm not finding that the failure to provide the
19  claims manual was a failure under the statute, because I think
20  it's doubtful whether or not the plaintiff was entitled to the
21  claims manual.  But there is no question that explicitly under
22  the statute that she was entitled to, among other things, the
23  plan itself, the updated plan itself, to say the least.  Annual
24  report, I don't know that that would be the covered, trust
25  agreement, the underlying contract itself.


0                                                            12

1           And Prudential needs to take that to heart because if
2   they don't do this in the future they stand to be sanctioned
3   yet again.
4           We are at a point, in my view, where the Court will
5   deny the defendant's motion for summary judgment\cross motion
6   for summary judgment.  Will grant the plaintiff's motion for
7   summary judgment.
8           I do not know whether there is a specific dollar
9   amount that needs to be considered at this point or whether it
10  would suffice to say that the motion is granted.  I don't know
11  if you have done a calculation, have you, Mr. Elkind what

Page 10

Add. 10

010807opinion

12  ·· amount would be due under the plan.

13          MR. ELKIND:  I would have to discuss that with

14      defense counsel.  We'll work it out.

15          THE COURT:  Well, it's not only amounts, amounts past

16      due with related interest.  We didn't address specifically the

17      issue of long term disability.  That wasn't really much argued,

18      although it does say, to go back to that for a moment, any

19      gainful employment related to the initial work.  I don't know.

20      Maybe you want to say something about this before I go any

21      further.  My inclination is to say that the same factual base

22      that results in the finding that she was ununable to work doing

23      the kinds of thing the she was doing would suffice to establish

24      that she was unable to persue any gainful employment that would

25      compensate her at the rate of 60 percent of her prior earnings,

0                                                                    13

1       but we didn't really argue that very much.

2               Do you want to say anything about that, just take a

3       hiatus for a moment, Mr. Elkind.

4               MR. ELKIND:  Your Honor, what I think -- well, is

5       typically done in this case, and I think maybe the parties

6       contemplated here without discussing it, was in view of a

7       finding such as Your Honor is making, benefits would be paid

8       for Ms. Carroll from the day she went out of employment to

9       current.  She would be put what is called back in plan and

10      there would now be a new assessment as to what her current

11      condition is evaluated.

12              THE COURT:  I don't need to make that assessment

13      then.

14              MR. ELKIND:  Your Honor, are you just finding her

15      disabled and that's what would happen by course.

Page 11

Add. 11

010807opinion

16          THE COURT:  Disabled.  Will that close the case

17    without a number or do we do that?

18          MR. ELKIND:  We have to come back -- I have done this

19    before, Your Honor.  We come back to you with an agreed upon

20    number within 30 days and we just have the Court issue an

21    order.  If there is any other problem, we couldn't come to a

22    number, then we are to instruct the Court and we have a

23    hearing.

24          THE COURT:  All right.  Let me leave it this way

25    then, I will not enter an order today.  I'll leave it to

                                                              14

1     counsel to submit an order based on the agreement.  The order

2     should read that the defendant's cross motion to plaintiff's

3     motion for summary judgment is granted.  The defendant's

4     motion, cross motion for summary judgment is denied.  The

5     plaintiff is declare disabled under the contract and that

6     appropriate benefits shall be payable in the amount of

7     whatever, and that if there is to be a further assessment on

8     the issue of eligibility for gainful employment, that that will

9     also take place, and you want to see if you can agree on

10    attorney's fees at the same time?

11          MR. ELKIND:  Yes, Your Honor.

12          THE COURT:  If there is an agreement on attorneys

13    fees and costs, the Court will award attorney's fees in the

14    amount of blank dollars, so on and so forth.  If you can't,

15    then you can let me know.

16          MR. ELKIND:  Your Honor, one more thing to assist us.

17    The judgment rate of interest would be the Maryland state

18    judgment rate?

19          THE COURT:  Is it six percent.

Page 12

Add. 12

010807opinion

20      MR. ELKIND:  It's 10 percent.

21      THE COURT:  I haven't looked at it.  I understand

22  there is a federal rate of interest.  There is a federal rate

23  of interest, is there not?

24      MR. ELKIND:  I never heard of one, Your Honor.

25      THE COURT:  You better look at that.  In the absence

15

1  of an applicable federal rate of interest, the Maryland rate of

2  interest would apply.

3      MR. SELTZER:  May I be heard on one point, Your

4  Honor, only with respect to the penalty issue.

5      THE COURT:  What issue?

6      MR. SELTZER:  With respect to the penalty issue with

7  regards to the production of documents.  To the extent that

8  Your Honor is not issuing an opinion yet, or an order yet,

9  perhaps it's necessarily held in abeyance, but to the extent

10  that I would just like to confirm from my client to the extent

11  that your record that we referred to thus far isn't complete

12  and while the response Your Honor put into the record does

13  indeed exist, there was again a subsequent request from

14  plaintiff's counsel and I frankly don't know how that was

15  addressed.

16      If I could, you know, if there was some evidence that

17  the documents were indeed produced or tendered, perhaps could

18  that issue be held in abeyance pending further --

19      THE COURT:  Well, for present purposes the problem I

20  had is it says "Go talk to somebody else."  You can't do that

21  under the statute.  Under the statute are you required when

22  asked, and you have 30 days to do it, by the way, under the

23  statute.  I think that's right.  You read 30 days, didn't you?

Page 13

Add. 13

010807opinion

24    You're reading it under the reg.

25         MR. SELTZER:  Right.

1    THE COURT:  I don't have the reg in front of me.  The

2    statute doesn't put it, place a time.  You say up to a hundred

3    dollars a day.  I haven't assessed you a hundred dollars a day.

4    I just put $1,500.

5         MR. SELTZER:  I respect that Your Honor.

6    THE COURT:  Which I thought was appropriate, which

7    would make a point to your client that you can't say go to

8    someone else to get the plan documents.  You're a fiduciary.

9    You've got to provide them pursuant to the reg within 30 days

10   or be liable for up to a hundred dollars a day at the court's

11   discretion.  The number I picked just because obviously a long

12   period of time went by and they didn't have them.  Whether they

13   eventually gave it or not really would not resolve the concern

14   that I have, which is that it wasn't done within 30 days,

15   unless you can show it was.

16        MR. SELTZER:  That's my point.  I don't know that I

17   can or not, Your Honor, but to the extent that, again, I wasn't

18   aware of that until we began argument today.  I would just like

19   some opportunity to question that one way or another.  It may

20   be that, indeed, it wasn't and your penalty stands and that's

21   the end of that.

22        THE COURT:  Well, to the extent that my penalty

23   stands, put it in the order.

24        MR. SELTZER:  Yes, sir.

25        THE COURT:  The Court will assess that amount and the

Add. 14

010807opinion

1    penalty will apply.  And it can be limited to the plan document
2    itself.  Nothing is more important than that.
3                    MR. SELTZER:  Very well.
4                    THE COURT:  That really is the guts of the case.
5    Whether there are other documents that were or were not
6    supplied, I'm certainly not prepared to say they were entitled
7    to your claims manuals or your training manuals.  That's asking
8    for perhaps too much, but not the plan.  The plan is the main
9    event so you are supposed to get that out in 30 days.
10                   All right.  You work out your order.  Get it to me
11   within, get it to me within 30 days.  See what you can work out
12   on your numbers.  All right.  Thank you.
13                   MR. ELKIND:  Thank you, Your Honor.
14                   MR. SELTZER:  Thank you, Your Honor.
15
16                        COURT REPORTER'S CERTIFICATE
17         I hereby certify that the aforegoing transcript was
18   prepared to the best of my ability due to a total failure of
19   the audio system in courtroom 4C during this hearing.
20
21                             Sharon O'Neill
22
23
24
25

□

Page 15

Add. 15

IN THE UNITED STATES DISTRICT COURT FOR MARYLAND

KATHLEEN CARROLL                             :
                                             :
        Plaintiff,                           :
                                             :
v.                                           : Civil Action No: 05-01472-PJM
                                             :
THE PRUDENTIAL INSURANCE COMPANY             :
OF AMERICA, et al                            :
                                             :
        Defendants.                          :

### AFFIDAVIT OF KATHLEEN CARROLL

I, Kathleen Carroll, am over the age of eighteen years, and am competent to testify to the matters contained herein under the penalty of perjury:

The "Group Insurance Contract" presented to this Court by my counsel at oral argument on 1/8/07 was the original plan paperwork given to me by my employer, McArdle Printing Co., at the time the disability plan changed to Prudential coverage in 2001. This was the only document distributed to me by McArdle concerning my disability coverage with Prudential.

I have a habit of doodling and had occasion to do so on the cover of the document. I was fond of using different colored inks during my work (with purple being my favorite).

Sworn and subscribed by me on this _12th_ day of January, 2007.


_____
Kathleen Carroll

## AFFIDAVIT OF EVALINE DOLEY

I am over the age of eighteen years and am competent to testify to the matters contained herein:

1.  I contacted the Human Resources Department of my employer, ADP, in October, 2000, when I first submitted by application for disability benefits. At that time, I requested an application for benefits and a copy of the disability plan.

2.  In response to my inquiry, Brenda Smith, the Human Resources Administrator sent me a copy of the Long Term Disability Coverage plan as part of the materials included with her letter dated 10/12/00.

3.  I gave copies of the letter and disability plan to my retained counsel, Scott B. Elkind, Esq. in addition to many other materials during the course of representation.

4.  The Exhibit marked JA1764 - JA 1798 is a complete and accurate copy of aforementioned letter and disability plan received by me from Ms. Smith at ADP.

_____          _____6/8/07_____
Evaline Doley                                               Date

## AFFIDAVIT OF MARY WOODY

I, MARY WOODY, am over 18 years of age, and am competent to certify to the following under the penalty of perjury:

1.   I currently have a claim with PRUDENTIAL FINANCIAL for disability benefits; my claim number is 10908257.

2.   The attached plan (marked as exhibit number one) enclosed plan is a copy of the original I received from my employer, Sytel, Inc.

3.   The attached plan does not contain an ERISA statement at the end of the policy.

4.   The writing on the cover of the plan was placed there by me when I first received the policy.


_____        Dec 5 2007
Signature                               _____
                                        Date

_____
Printed Name    MARY C WOODY

Your Group Benefits

## Sytel, Inc.

### *Class 2*

**Short Term Disability Coverage**
**Long Term Disability Coverage**

*firm Employer*
*( Sytel was*
*purchased by*
*Tech Team)*

 **Prudential** **Financial**

# Benefit Highlights

## SHORT TERM DISABILITY PLAN

This short term disability plan provides financial protection by paying a portion of your income while you are disabled. The amount you receive is based on the amount you earned before your disability began. In some cases, you can receive disability payments even if you work while you are disabled. Benefits start after the elimination period.

| | |
|---|---|
| **Program Date:** | December 1, 1999 |
| **Contract Holder:** | SYTEL, INC. |
| **Group Contract Number:** | DG-29132-MD |
| **Covered Classes:** | All Employees other than Employees who earn $80,000 or more annually |
| **Minimum Hours Requirement:** | Employees must be working at least 30 hours per week. |
| **Employment Waiting Period:** | You may need to work for your Employer for a continuous period before you become eligible for the plan. The period must be agreed upon by your Employer and Prudential. |
| | Your Employer will let you know about this waiting period. |
| **Elimination Period:** | 14 days for disability due to accident; 14 days for disability due to sickness. |
| | Benefits begin the day after the Elimination Period is completed. |
| **Weekly Benefit:** | 60% of your weekly earnings, but not more than $1,000. If this amount is not a multiple of $1.00, it will be rounded to the next higher multiple of $1.00. |
| | Your benefit may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered under this plan. |
| **Maximum Period of Benefits:** | 11 weeks of benefits. |
| | Contributions are required for your coverage while you are receiving payments under this plan. |
| **Cost of Coverage:** | The short term disability plan is provided to you on a non-contributory basis. The entire cost of your coverage under the plan is being paid by your Employer. |

The above items are only highlights of your coverage. For a full description please read this entire

83500
CBH-LTD-1007

1

(S-1)(29132-LWDI/LTD2)

Group Insurance Certificate.

# Benefit Highlights

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you have a long period of disability. The amount you receive is based on the amount you earned before your disability began. In some cases, you can receive disability payments even if you work while you are disabled. Benefits start after the elimination period.

**Program Date:** December 1, 1999

**Contract Holder:** SYTEL, INC.

**Group Contract Number:** DG-29132-MD

**Covered Classes:** All Employees other than Employees who earn $80,000 or more annually

**Minimum Hours Requirement:** Employees must be working at least 30 hours per week.

**Employment Waiting Period:** You may need to work for your Employer for a continuous period before you become eligible for the plan. The period must be agreed upon by your Employer and Prudential.

Your Employer will let you know about this waiting period.

**Elimination Period:** 90 days.

Benefits begin the day after the Elimination Period is completed.

**Monthly Benefit:** 60% of your monthly earnings, but not more than $4,000.

Your benefit may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered or may be limited under this coverage.

**Maximum Period of Benefits:**

| Your Age on Date Disability Begins | Your Maximum Benefit Duration |
| --- | --- |
| Under age 61 | To your normal retirement age*, but not less than 60 months |
| Age 61 | To your normal retirement age*, but not less than 48 months |
| Age 62 | To your normal retirement age*, but not less than 42 months |
| Age 63 | To your normal retirement age*, but not less than 36 months |
| Age 64 | To your normal retirement age*, but not less than 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |

| | |
|---|---|
| Age 68 | 15 months |
| Age 69 and over | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

No contributions are required for your coverage while you are receiving payments under this plan.

**Cost of Coverage:**   The long term disability plan is provided to you on a non-contributory basis. The entire cost of your coverage under the plan is being paid by your Employer.

**The above items are only highlights of your coverage.  For a full description please read this entire Group Insurance Certificate.**

83500
CBH-LTD-1007

(S-1)(29132-LWDI/LTD2)

# Table of Contents

Benefit Highlights-Short Term Disability Plan ...........................................................................1

Benefit Highlights-Long Term Disability Plan............................................................................2

Certificate of Coverage.............................................................................................................5

General Provisions   ...................................................................................................................6

Short Term Disability Coverage-General Information..............................................................10

Short Term Disability Coverage-Benefit Information ...............................................................11

Short Term Disability-Claim Information..................................................................................17

Long Term Disability Coverage-General Information................................................................20

Long Term Disability Coverage-Benefit Information ................................................................21

Long Term Disability-Other Benefits ......................................................................................32

Long Term Disability-Claim Information..................................................................................33

Long Term Disability-Other Services ......................................................................................36

Glossary...................................................................................................................................38

The Prudential Insurance Company of America

# Certificate of Coverage

The Prudential Insurance Company of America (referred to as Prudential) welcomes you to the plan.   .

This is your Certificate of Coverage as long as you are eligible for coverage and you meet the requirements for becoming insured.  You will want to read this certificate and keep it in a safe place.

Prudential has written this certificate in booklet format to be understandable to you.  If you should have any questions about the content or provisions, please consult Prudential's claims paying office.  Prudential will assist you in any way to help you understand your benefits.

The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance Certificate.

## Prudential's Address

The Prudential Insurance Company of America
290 West Mount Pleasant Avenue
Livingston, New Jersey 07039

83500
CERT-1001

(S-1)

# General Provisions

## What Is the Certificate?

This certificate is a written document prepared by Prudential which tells you:

- the coverage to which you may be entitled;

- to whom Prudential will make a payment; and

- the limitations, exclusions and requirements that apply within a plan.

## General Definitions used throughout this certificate include:

*You* means a person who is eligible for Prudential coverage.

*We, us, and our* means The Prudential Insurance Company of America.

*Employee* means a person who is in active employment with the Employer for the minimum hours requirement.

*Insured* means any person covered under a coverage.

*Plan* means a line of coverage under the Group Contract.

## When Are You Eligible for Coverage?

If you are working for your Employer in a covered class, the date you are eligible for coverage is the later of:

- the plan's program date; and

- the day after you complete your *employment waiting period*.

*Employment waiting period* means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan  The period must be agreed upon by the Employer and Prudential.

## When Does Your Coverage Begin?

When your Employer pays the entire cost of your coverage under a plan, you will be covered at 12:01 a.m. standard time where you reside on the date you are eligible for coverage, provided you are in *active employment* on that date.

When you and your Employer share the cost of your coverage under a plan, you will be covered at 12:01 a.m. standard time where you reside on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;

- the date you apply for insurance, if you apply within 31 days after your eligibility date; or

**83500**
CGP-1009

(S-2)

- the date Prudential approves your application, if **evidence of insurability** is required.

Evidence of insurability is required if you:

- are a late applicant, which means you apply for coverage more than 31 days after the date you are eligible for coverage; or

- voluntarily canceled your coverage and are reapplying; or

- apply after any of your coverage ended because you did not pay a required contribution; or

- have not met a previous evidence requirement to become insured under any plan the Employer has with Prudential.

An evidence of insurability form can be obtained from your Employer.

---

**Active employment** means you are working for your Employer for earnings that are paid regularly and that you are either:

- performing the material and substantial duties of your regular occupation, if it is a scheduled work day; or

- capable of performing the material and substantial duties of your regular occupation, if you are not at work due to a non-scheduled work day, holiday, vacation day, excused leave of absence or emergency leave of absence.

---

You must be working at least 30 hours per week.

---

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

**Evidence of insurability** means a statement of your medical history which Prudential will use to determine if you are approved for coverage. Evidence of insurability will be provided at your own expense.

---

## What If You Are Not in Active Employment on the Date Your Coverage Would Normally Begin?

If you are not in active employment on the date your coverage would normally begin, your coverage will begin on the date you return to active employment.

**83500**
CGP-1009

(S-2)

## Once Your Coverage Begins, What Happens If You Are Temporarily Not Working?

If you are on a temporary **layoff**, and if premium is paid, you will be covered to the end of the month following the month in which your temporary layoff begins.

If you are on a *leave of absence*, and if premium is paid, you will be covered to the end of the month following the month in which your leave of absence begins.

With respect to leave under the federal Family and Medical Leave Act of 1993 (FMLA) or similar state law, continuation of coverage under the plan during such leave will be governed by your Employer's policies regarding continuation of such coverage for non-FMLA leave purposes and any applicable law. Continuation of such coverage pursuant to this provision is contingent upon Prudential's timely receipt of premium payments and written confirmation of your FMLA leave by your Employer.

If you are working less than 30 hours per week, for reasons other than disability, and if premium is paid, you will be covered to the end of the month following the month in which your reduced hours begin.

*Layoff or leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. But layoff or leave of absence does not mean your normal vacation time, jury duty, an excused absence, or any period of disability or FMLA leave.

## When Will Changes to Your Coverage Take Effect?

Once your coverage begins, any increased or additional coverage will take effect immediately upon the effective date of the change, if you are in active employment or if you are on a covered layoff or leave of absence. If you are not in active employment due to injury or sickness, any increased or additional coverage will begin on the date you return to active employment. An increase in your long term disability coverage may be subject to a pre-existing condition limitation as described in the plan. Any decrease in coverage will take effect immediately upon the effective date of the change. Neither an increase nor a decrease in coverage will affect a *payable claim* that occurs prior to the increase or decrease.

*Payable claim* means a claim for which Prudential is liable under the terms of the Group Contract.

## When Does Your Coverage End?

Your coverage under the Group Contract or a plan ends on the earliest of:

- the date the Group Contract or a plan is canceled;

- the date you are no longer a member of the covered classes;

- the date your covered class is no longer covered;

- the last day of the period for which you made any required contributions; or

**83500**
CGP-1009

(S-2)

- the last day you are in active employment except as provided under the temporary absence from work provisions.

## Does the Coverage under a Plan Replace or Affect any Workers' Compensation or State Disability Insurance?

The coverage under a plan does not replace or affect the requirements for coverage by workers' compensation or state disability insurance.

## Does Your Employer Act as Prudential's Agent?

For purposes of the Group Contract, your Employer acts on its own behalf. Under no circumstances will your Employer be deemed the agent of Prudential.

## Does This Certificate Address Any Rights to Other Benefits or Affect Your Employment with Your Employer?

This certificate sets forth only the terms and conditions for coverage and receipt of benefits for Short and Long Term Disability. It does not address and does not confer any rights, or take away any rights, if any, to other benefits or employment with your Employer. Your rights, if any, to other benefits or employment are solely determined by your Employer. Prudential plays no role in determining, interpreting, or applying any such rights that may or may not exist.

## How Can Statements Made in Your Application for this Coverage be Used?

Prudential considers any statements you or your Employer make in a signed application for coverage a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or

- cancel your coverage from the original effective date.

If a statement is used in a contest, a copy of that statement will be furnished to you or, in the event of your death or incapacity, to your eligible survivor or personal representative.

A statement will not be contested after the amount of insurance has been in force, before the contest, for at least two years during your lifetime.

We will use only statements made in a signed application as a basis for doing this.

If the Employer gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and

- make a fair adjustment of the premium.

# Short Term Disability Coverage

## GENERAL INFORMATION

### Who Is in the Covered Class(es) for the Insurance?

The Covered Classes are:

All Employees other than Employees who earn $80,000 or more annually

### How Many Hours Must You Work to be Eligible for Coverage?

You must be working at least 30 hours per week.

### What Is Your Employment Waiting Period?

You may need to work for your Employer for a continuous period before you become eligible for the coverage. The period must be agreed upon by your Employer and Prudential.

Your Employer will let you know about this waiting period.

### Who Pays for Your Coverage?

Your coverage is paid for by your Employer.

# Short Term Disability Coverage

## BENEFIT INFORMATION

### How Does Prudential Define Disability?

You are disabled when Prudential determines that:

- you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and

- you have a 20% or more loss in weekly earnings due to the same sickness or injury.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

---

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

*Injury* means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

---

### How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your *elimination period*. Prudential will treat your disability as continuous if your disability stops for 5 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period for disability which is due to an accident and which begins while you are covered is 14 days; your elimination period for disability which is due to a sickness and which begins while you are covered is 14 days.

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

## Can You Satisfy Your Elimination Period If You Are Working?

Yes, provided you meet the definition of disability.

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met. We will send you a payment each week for any period for which Prudential is liable.

## How Much Will Prudential Pay If You Are Disabled and Not Working?

We will follow this process to figure out your *weekly payment*:

1. Multiply your weekly earnings by 60%. If this amount is not a multiple of $1.00, it will be rounded to the next higher multiple of $1.00.

2. The maximum *weekly benefit* is $1,000.

3. Compare the answer in item 1 with the maximum weekly benefit. The lesser of these two amounts is your *gross disability payment*.

4. Subtract from your gross disability payment any *deductible sources of income*.

That amount figured in item 4 is your weekly payment.

After the elimination period, if you are disabled for less than 1 week, we will send you 1/7th of your payment for each day of disability.

*Weekly payment* means your payment after any deductible sources of income have been subtracted from your gross disability payment.

*Weekly benefit* means the total benefit amount for which you are insured under this plan subject to the maximum benefit.

*Gross disability payment* means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

*Deductible sources of income* means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

## What Are Your Weekly Earnings?

Weekly earnings means your gross weekly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

## What Will We Use to Determine Weekly Earnings If You Become Disabled During a Covered Layoff or Leave of Absence?

If you become disabled while you are on a covered layoff or leave of absence, we will use your weekly earnings from your Employer in effect just prior to the date your absence begins.

## How Much Will Prudential Pay If You Work While You Are Disabled?

We will send you the weekly payment if you are disabled and your weekly *disability earnings*, if any, are less than 20% of your weekly earnings.

If you are disabled and your weekly disability earnings are from 20% through 80% of your weekly earnings, you will receive payments based on the percentage of income you are losing due to your disability. We will follow this process to figure out your weekly payment:

1. Subtract your disability earnings from your weekly earnings.

2. Divide the answer in item 1 by your weekly earnings. This is your percentage of lost earnings.

3. Multiply your weekly payment as shown above by the answer in item 2.

This is the amount Prudential will pay you for each week.

Prudential may require you to send proof of your disability earnings each week. We will adjust your weekly payment based on your disability earnings. As part of your proof of disability earnings, we can require that you send us appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's, which we believe are necessary to substantiate your income.

We will not pay you for any week during which disability earnings exceed 80% of weekly earnings.

*Disability earnings* means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to the greatest extent possible. This would be the greatest extent of work, based on your restrictions and limitations, that you are able to do in your regular occupation, that is reasonably available. Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.

## What Happens If Your Disability Earnings Fluctuate?

If your disability earnings are expected to fluctuate widely from week to week, Prudential may average your disability earnings over the most recent 3 weeks to determine if your claim should continue subject to all other terms and conditions in the plan.

If Prudential averages your disability earnings, we will terminate your claim if the average of your disability earnings from the last 3 weeks exceeds 80% of weekly earnings.

We will not pay you for any week during which disability earnings exceed 80% of weekly earnings.

## What Are Deductible Sources of Income?

Prudential will deduct from your gross disability payment the amount that you receive or are entitled to receive as loss of time disability income payments under any state compulsory benefit **act** or **law**.

**Law or act** means the original enactment of the law or act and all amendments.

## What If Subtracting Deductible Sources of Income Results in a Zero Benefit? (Minimum Benefit)

The minimum weekly payment is $25.

Prudential may apply this amount toward an outstanding overpayment.

## What If Prudential Determines that You May Qualify for Deductible Income Benefits?

If we determine that you may qualify for benefits under the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been awarded.

However, we will NOT reduce your payment by the estimated amount if you:

- apply for the benefits;

- appeal any denial to all administrative levels Prudential considers are necessary; and

- sign Prudential's Reimbursement Agreement form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or

- that benefits have been denied and all appeals Prudential considers are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

## How Long Will Prudential Continue to Send You Payments?

Prudential will send you a payment each week up to the **maximum period of payment**. Your maximum period of payment is 11 weeks during a continuous period of disability.

We will stop sending you payments and your claim will end on the earliest of the following:

1.  When you are able to work in your regular occupation on a **part-time basis** but you choose not to.

2.  The end of the maximum period of payment.

3.  The date you are no longer disabled under the terms of the plan.

4.  The date you fail to submit proof of continuing disability satisfactory to Prudential.

5.  The date your disability earnings exceed the amount allowable under the plan.

6.  The date you die.

---

***Maximum period of payment*** means the longest period of time Prudential will make payments to you for any one period of disability.

***Part-time basis*** means the ability to work and earn between 20% and 80% of your weekly earnings.

---

## What Disabilities Are Not Covered Under Your Plan?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

*   intentionally self-inflicted injuries;

*   active participation in a riot;

*   commission of a felony for which you have been convicted under state or federal law; or

*   ***occupational sickness or injury.*** However, Prudential will cover disabilities due to occupational sicknesses or injuries for partners or sole proprietors who cannot be covered by workers' compensation law.

Your plan does not cover a disability due to war, declared or undeclared, or any act of war.

Prudential will not make a payment for any period of disability during which you are incarcerated as a result of a felony conviction.

---

***Occupational sickness or injury*** means an injury or a sickness paid or payable by any workers' compensation law, occupational disease law or similar law.

---

## What Happens If You Return to Work Full Time and You Become Disabled Again?

1.  If your current disability is related or due to the same cause(s) as your prior disability for which Prudential made a payment:

    Prudential will treat your current disability as part of your prior claim and you will not have to complete another elimination period if you return to active employment for your Employer on a full time basis for 30 consecutive days or less. Your disability will be subject to the same terms of the plan as your prior claim.

2.  If your current disability is unrelated to your prior disability for which Prudential made a payment:

    Prudential will treat your current disability as a new claim and you will have to complete another elimination period. Your disability will be subject to all of the plan provisions.

If you become covered under any other group short term disability plan, you will not be eligible for payments under the Prudential plan.

## How Can Prudential Help·You and Your Employer Prevent a Disability or Help You Return to Work?

Prudential has rehabilitation services available.  As these services are designed to coordinate with your long term disability coverage, please see the Other Services section in your long term disability plan.

# Short Term Disability Coverage

## CLAIM INFORMATION

### When Do You Notify Prudential of a Claim?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Prudential written proof of your claim no later than 90 days after your elimination period ends. If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from us. If you do not receive the form from Prudential within 15 days of your request, send Prudential written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### How Do You File a Claim?

You and your Employer must fill out your own section of the claim form and then give it to your attending doctor. Your doctor should fill out his or her section of the form and send it directly to Prudential.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

(1) That you are under the *care* of a *doctor*.

(2) The appropriate documentation of your weekly earnings.

(3) The date your disability began.

(4) Appropriate documentation of the disabling disorder.

(5) The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation.

(6) The name and address of any *hospital or institution* where you received treatment, including all attending doctors.

(7) The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

83500
CCLM-STD-1006

(S-1)

*Care* means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

*Doctor* means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize you, your spouse, or a child, grandchild, brother, sister, aunt, uncle, niece, nephew, parent, or grandparent of you or your spouse as a doctor for a claim that you send to us.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## Who Will Prudential Make Payments To?

Prudential will make payments to you.

## What Happens If Prudential Overpays Your Claim?

Prudential has the right to recover any overpayments due to:

- fraud;

- any error Prudential makes in processing a claim; and

- your receipt of deductible sources of income.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Prudential will not recover more money than the amount we paid you.

## What Are the Time Limits for Legal Proceedings?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

83500
CCLM-STD-1006

18

(S-1)

## How Will Prudential Handle Insurance Fraud?

Prudential wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Prudential promises to focus on all means necessary to support fraud detection, investigation and prosecution.

In some jurisdictions, if you knowingly and with intent to defraud Prudential, file an application or a statement of claim containing any materially false information or conceal for the purpose of misleading, information concerning any fact material thereto, you commit a fraudulent insurance act, which is a crime and subjects you to criminal and civil penalties. These actions will result in denial or termination of your claim, and, where such laws apply, are subject to prosecution and punishment to the full extent under any applicable law. Prudential will pursue all appropriate legal remedies in the event of insurance fraud.

# Long Term Disability Coverage

## GENERAL INFORMATION

### Who Is in the Covered Class(es) for the Insurance?

The Covered Classes are:

All Employees other than Employees who earn $80,000 or more annually.

### How Many Hours Must You Work to be Eligible for Coverage?

You must be working at least 30 hours per week.

### What Is Your Employment Waiting Period?

You may need to work for your Employer for a continuous period before you become eligible for the coverage.  The period must be agreed upon by your Employer and Prudential.

Your Employer will let you know about this waiting period.

### Who Pays for Your Coverage?

Your coverage is paid for by your Employer.

# Long Term Disability Coverage

## BENEFIT INFORMATION

### How Does Prudential Define Disability?

You are disabled when Prudential determines that:

- you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and

- you have a 20% or more loss in your *indexed monthly earnings* due to that *sickness* or *injury*.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

---

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Gainful occupation* means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

*Injury* means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

---

***Indexed monthly earnings*** means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor. Prudential reserves the right to use some other similar measurement approved by the Commissioner of Insurance of the State of Maryland if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

## How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your ***elimination period***. Prudential will treat your disability as continuous if your disability stops for 30 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period is 90 days.

***Elimination period*** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

## Can You Satisfy Your Elimination Period If You Are Working?

Yes, provided you meet the definition of disability.

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met. We will send you a payment each month for any period for which Prudential is liable.

## How Much Will Prudential Pay If You Are Disabled and Not Working?

We will follow this process to figure out your ***monthly payment***:

1.  Multiply your monthly earnings by 60%.

2.  The maximum ***monthly benefit*** is $4,000.

3.  Compare the answer in item 1 with the maximum monthly benefit. The lesser of these two amounts is your ***gross disability payment***.

4.  Subtract from your gross disability payment any ***deductible sources of income***.

That amount figured in item 4 is your monthly payment.

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30th of your payment for each day of disability.

**Monthly payment** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**Monthly benefit** means the total benefit amount for which you are insured under this plan subject to the maximum benefit.

**Gross disability payment** means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

**Deductible sources of income** means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

## What Are Your Monthly Earnings?

Monthly earnings means your gross monthly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

## What Will We Use to Determine Monthly Earnings If You Become Disabled During a Covered Layoff or Leave of Absence?

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

## How Much Will Prudential Pay If You Work While You Are Disabled?

We will send you the monthly payment if you are disabled and your monthly **disability earnings**, if any, are less than 20% of your indexed monthly earnings due to the same sickness or injury.

If you are disabled and your monthly disability earnings are 20% or more of your indexed monthly earnings, due to the same sickness or injury, Prudential will figure your payment as follows:

During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1. Add your monthly disability earnings to your gross disability payment.

2. Compare the answer in item 1 to your indexed monthly earnings.

If the answer from item 1 is less than or equal to 100% of your indexed monthly earnings, Prudential will not further reduce your monthly payment.

If the answer from item 1 is more than 100% of your indexed monthly earnings, Prudential will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

1. Subtract your disability earnings from your indexed monthly earnings.

2. Divide the answer in item 1 by your indexed monthly earnings. This is your percentage of lost earnings.

3. Multiply your monthly payment by the answer in item 2.

This is the amount Prudential will pay you each month.

If your monthly disability earnings exceed 80% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Prudential may require you to send proof of your monthly disability earnings on a monthly basis. We will adjust your payment based on your monthly disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's, which we believe are necessary to substantiate your income.

***Disability earnings*** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible. This would be, based on your restrictions and limitations:

- During the first 24 months of disability payments, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.

- Beyond 24 months of disability payments, the greatest extent of work you are able to do in any occupation, that is reasonably available, for which you are reasonably fitted by education, training or experience.

Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.

## What Happens If Your Disability Earnings Fluctuate?

If your disability earnings are expected to fluctuate widely from month to month, Prudential may average your disability earnings over the most recent 3 months to determine if your claim should continue subject to all other terms and conditions in the plan.

If Prudential averages your disability earnings, we will terminate your claim if:

If Prudential averages your disability earnings, we will terminate your claim if the average of your disability earnings from the last 3 months exceeds 80% of indexed monthly earnings.

We will not pay you for any month during which disability earnings exceed the above amount.

## What Are Deductible Sources of Income?

Prudential will deduct from your gross disability payment the following deductible sources of income:

1.  The amount that you receive or are entitled to receive as loss of time benefits under:

    (a)  a workers' compensation law;

    (b)  an occupational disease law; or

    (c)  any other *act* or *law* with similar intent.

2.  The amount that you receive or are entitled to receive as loss of time disability income payments under any:

    (a)  state compulsory benefit act or law;

    (b)  other group insurance plan that does not reduce its benefits by the amount that you receive or are entitled to receive as loss of time benefits under this plan; or

    (c)  governmental retirement system as the result of your job with your Employer.

3.  The amount that you, your spouse and children receive or are entitled to receive as loss of time disability payments because of your disability under:

    (a)  the United States Social Security Act;

    (b)  the Railroad Retirement Act;

    (c)  the Canada Pension Plan;

    (d)  the Quebec Pension Plan; or

    (e)  any similar *plan* or *act*.

    Amounts paid to your former spouse or to your children living with such spouse will not be included.

4.  The amount that you receive as retirement payments or the amount your spouse and children receive as retirement payments because you are receiving payments under:

    (a)  the United States Social Security Act;

    (b)  the Railroad Retirement Act;

    (c)  the Canada Pension Plan;

    (d)  the Quebec Pension Plan; or

    (e)  any similar plan or act.

    Benefits paid to your former spouse or to your children living with such spouse will not be included.

5.  The amount that you:

    (a)  receive as disability payments under your Employer's *retirement plan*;

    (b)  voluntarily elect to receive as retirement or early retirement payments under your Employer's retirement plan; or

(c) receive as retirement payments when you reach normal retirement age, as defined in your Employer's retirement plan.

Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefits which would have been paid if the disability had not occurred.

Retirement payments will be those benefits which are paid based on your Employer's contribution to the retirement plan. Disability benefits which reduce the retirement benefits under the plan will also be considered as a retirement benefit.

Amounts received do not include amounts rolled over or transferred to any eligible retirement plan. Prudential will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

6. The amount you receive under the maritime doctrine of maintenance, wages and cure. This includes only the "wages" part of such benefits.

7. The amount that you receive, due to your disability, from a third party (after subtracting attorney's fees and court costs) by judgment, settlement or otherwise.

8. The amount that you receive from a partnership, proprietorship or any similar draws.

With the exception of retirement payments, or amounts that you receive from a partnership, proprietorship or any similar draws, Prudential will only subtract deductible sources of income which are payable as a result of the same disability.

We will not reduce your payment by your Social Security income if your disability begins after age 65 and you were already receiving Social Security retirement payments.

*Law, plan or act* means the original enactment of the law, plan or act and all amendments.

*Retirement plan* means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

## What Are Not Deductible Sources of Income?

Prudential will not deduct from your gross disability payment income you receive from, but not limited to, the following sources:

- 401(k) plans;

- profit sharing plans;

- thrift plans;

- tax sheltered annuities;

- stock ownership plans;

- non-qualified plans of deferred compensation;

- pension plans for partners;

- military pension and disability income plans;

- credit disability insurance;

- franchise disability income plans;

- a retirement plan from another Employer;

- individual retirement accounts (IRA);

- motor vehicle insurance.

## What If Subtracting Deductible Sources of Income Results in a Zero Benefit? (Minimum Benefit)

The minimum monthly payment is $100.00.

Prudential may apply this amount toward an outstanding overpayment.

## What Happens When You Receive Certain Increases from Deductible Sources of Income?

Once Prudential has subtracted any deductible source of income from your gross disability payment, Prudential will not further reduce your payment:

- due to a cost of living increase from that source; or

- by the amount of any increase in your Social Security income, other than an increase due to a change in dependency status.

## What If Prudential Determines that You May Qualify for Deductible Income Benefits?

If we determine that you may qualify for benefits under item 1, 2 or 3 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been awarded.

However, we will NOT reduce your payment by the estimated amount under item 1, 2 or 3 in the deductible sources of income section if you:

- apply for the benefits;

- appeal any denial to all administrative levels Prudential considers necessary; and

- sign Prudential's Reimbursement Agreement form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or

83500
CBI-LTD-1029

(S-1)(29132-LWDI/LTD2)

- that benefits have been denied and all appeals Prudential considers necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

## What Happens If You Receive a Lump Sum Payment?

If you receive a lump sum payment from any deductible source of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, we will use a reasonable one.

## How Long Will Prudential Continue to Send You Payments?

Prudential will send you a payment each month up to the *maximum period of payment*. Your maximum period of payment is:

| Your Age on Date Disability Begins | Your Maximum Benefit Duration |
|---|---|
| **Under age 61** | **To your normal retirement age\*, but not less than 60 months** |
| **Age 61** | **To your normal retirement age\*, but not less than 48 months** |
| **Age 62** | **To your normal retirement age\*, but not less than 42 months** |
| **Age 63** | **To your normal retirement age\*, but not less than 36 months** |
| **Age 64** | **To your normal retirement age\*, but not less than 30 months** |
| **Age 65** | **24 months** |
| **Age 66** | **21 months** |
| **Age 67** | **18 months** |
| **Age 68** | **15 months** |
| **Age 69 and over** | **12 months** |

\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.

We will stop sending you payments and your claim will end on the earliest of the following:

1. During the first 24 months of payments, when you are able to work in your regular occupation on a *part-time basis* but you choose not to; after 24 months of payments, when you are able to work in any gainful occupation for which you are reasonably fitted by education, training or experience on a part-time basis but you choose not to.

2. The end of the maximum period of payment.

3. The date you are no longer disabled under the terms of the plan.

4. The date you fail to submit proof of continuing disability satisfactory to Prudential.

5. The date your disability earnings exceed the amount allowable under the plan.

6. The date you die.

7. The date you decline to participate in a rehabilitation program that Prudential considers appropriate for your situation and that is approved by your doctor.

---

*Maximum period of payment* means the longest period of time Prudential will make payments to you for any one period of disability.

---

*Part-time basis* means the ability to work and earn 20% or more of your indexed monthly earnings.

## What Disabilities Have a Limited Pay Period Under Your Plan?

Disabilities which, as determined by Prudential, are due in whole or part to *mental illness* have a limited pay period during your lifetime.

The limited pay period for mental illness is 24 months during your lifetime.

Prudential will continue to send you payments for disabilities due in whole or part to mental illness beyond the 24 month period if you meet one or both of these conditions:

1. If you are *confined* to a *hospital or institution* at the end of the 24 month period, Prudential will continue to send you payments during your *confinement*.

   If you are still disabled when you are discharged, Prudential will send you payments for a recovery period of up to 90 days.

   If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Prudential will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2. In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Prudential will send payments during the length of the confinement.

Prudential will not pay beyond the limited pay period as indicated above, or the maximum period of payment for any one period of disability, whichever occurs first.

Prudential will not apply the mental illness limitation to dementia if it is a result of:

- stroke;
- trauma;
- viral infection;
- Alzheimer's disease; or
- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Mental illness* means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, dementia, substance related disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Confined or confinement* for this section means a hospital stay of at least 8 hours per day.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## What Disabilities Are Not Covered Under Your Plan?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

- intentionally self-inflicted injuries;
- active participation in a riot; or
- commission of a felony for which you have been convicted under state or federal law.

Your plan does not cover a disability which:

- begins within 12 months of the date your coverage under the plan becomes effective; and
- is due to a pre-existing condition.

Your plan does not cover a disability due to war, declared or undeclared, or any act of war.

Prudential will not make a payment for any period of disability during which you are incarcerated as a result of a felony conviction.

## What Is a Pre-Existing Condition?

You have a pre-existing condition if:

1. You received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medicines, or followed treatment recommendation in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available; or

2. You had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available.

A pre-existing condition does not include a condition admitted in your application for insurance which was not excluded by a signed waiver rider.

## How Does a Pre-Existing Condition Affect an Increase in Your Benefits?

If there is an increase in your benefits due to an amendment of the plan; or your enrollment in another plan option, a benefit limit will apply if your disability is due to a pre-existing condition.

You will be limited to the benefits you had on the day before the increase if your disability begins during the 12 month period starting with the date the increase in benefits would have been effective. The increase will not take effect until your disability ends.

## How Does the Pre-Existing Condition Work If You Were Covered Under Your Employer's Prior Plan?

Special rules apply to pre-existing conditions, if this long term disability plan replaces your Employer's prior plan and:

- you were covered by that plan on the day before this plan became effective; and

- you became covered under this plan within thirty-one days of its effective date.

The special rules are:

1.  If the Employer's prior plan did not have a pre-existing condition exclusion or limitation, then a pre-existing condition will not be excluded or limited under this plan.

2.  If the Employer's prior plan did have a pre-existing condition exclusion or limitation, then the limited time does not end after the first 12 months of coverage. Instead it will end on the date any equivalent limit would have ended under the Employer's prior plan.

3.  If the change from your Employer's prior plan to this plan of coverage would result in an increase in your amount of benefits, the benefits for your disability that is due to a pre-existing sickness or injury will not increase. Instead the benefits are limited to the amount you had on the day before the plan change.

## What Happens If You Return to Work Full Time and Your Disability Occurs Again?

If you have a *recurrent disability*, as determined by Prudential, we will treat your disability as part of your prior claim and you will not have to complete another elimination period if:

- you were continuously insured under this plan for the period between your prior claim and your current disability; and

- your recurrent disability occurs within 6 months of the end of your prior claim.

Your recurrent disability will be subject to the same terms of the plan as your prior claim. Any disability which occurs after 6 months from the date your prior claim ended will be treated as a new claim. The new claim will be subject to all of the plan provisions.

If you become covered under any other group long term disability plan, you will not be eligible for payments under the Prudential plan.

---

- *Recurrent disability* means a disability which is due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

---

# Long Term Disability Coverage

## OTHER BENEFIT FEATURES

### What Benefits Will be Provided to Your Family If You Die? (Survivor Benefit)

When Prudential receives proof that you have died, we will pay your *eligible survivor* a lump sum benefit equal to 6 months of your gross disability payment if, on the date of your death:

- your disability had continued for 180 or more consecutive days; and

- you were receiving or were entitled to receive payments under the plan.

If you have no eligible survivors, payment will be made to your estate.

However, we will first apply the survivor benefit to any overpayment which may exist on your claim.

---

*Eligible survivor* means your spouse, if living; otherwise, your children under age 25.

# Long Term Disability Coverage

## CLAIM INFORMATION

### When Do You Notify Prudential of a Claim?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Prudential written proof of your claim no later than 90 days after your elimination period ends. If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from us. If you do not receive the form from Prudential within 15 days of your request, send Prudential written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### How Do You File a Claim?

You and your Employer must fill out your own section of the claim form and then give it to your attending doctor. Your doctor should fill out his or her section of the form and send it directly to Prudential.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

(1) That you are under the *care* of a *doctor*.

(2) The appropriate documentation of your monthly earnings.

(3) The date your disability began.

(4) Appropriate documentation of the disabling disorder.

(5) The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.

(6) The name and address of any hospital or institution where you received treatment, including all attending doctors.

(7) The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

***Care*** means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

***Doctor*** means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or
- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, grandchild, brother, sister, aunt, uncle, niece, nephew, parent, or grandparent of you or your spouse as a doctor for a claim that you send to us.

## Who Will Prudential Make Payments To?

Prudential will make payments to you.

## What Happens If Prudential Overpays Your Claim?

Prudential has the right to recover any overpayments due to:

- fraud;

- any error Prudential makes in processing a claim; and

- your receipt of deductible sources of income.

You must reimburse us in full.  We will determine the method by which the repayment is to be made.

Prudential will not recover more money than the amount we paid you.

## What Are the Time Limits for Legal Proceedings?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

83500
CCLM-LTD-1006

(S-1)

## How Will Prudential Handle Insurance Fraud?

Prudential wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Prudential promises to focus on all means necessary to support fraud detection, investigation and prosecution.

In some jurisdictions, if you knowingly and with intent to defraud Prudential, file an application or a statement of claim containing any materially false information or conceal for the purpose of misleading, information concerning any fact material thereto, you commit a fraudulent insurance act, which is a crime and subjects you to criminal and civil penalties. These actions will result in denial or termination of your claim, and, where such laws apply, are subject to prosecution and punishment to the full extent under any applicable law. Prudential will pursue all appropriate legal remedies in the event of insurance fraud.

83500
CCLM-LTD-1006

(S-1)

# Long Term Disability Coverage

## OTHER SERVICES

### How Can Prudential Help Your Employer Identify and Provide Worksite Modification?

A worksite modification might be what is needed to allow you to perform the material and substantial duties of your regular occupation with your Employer. One of our designated professionals will assist you and your Employer to identify a modification we agree is likely to help you remain at work or return to work. This agreement will be in writing and must be signed by you, your Employer and Prudential.

When this occurs, Prudential will reimburse your Employer for the cost of the modification up to the greater of:

- $1,000; or

- the equivalent of 2 months of your monthly benefit.

This benefit is available to you on a one time only basis.

### How Can Prudential's Rehabilitation Program Help You Return to Work?

Prudential has a rehabilitation program available. A rehabilitation program means a program designed to assist you to return to work.

As your file is reviewed, medical and vocational information will be analyzed to determine if rehabilitation services might help you return to work.

Once the initial review is completed by our rehabilitation program specialists working along with your doctor and other appropriate specialists, Prudential may elect to offer you and pay for a return to work program. If the return to work program is not developed by Prudential's rehabilitation program specialists, you must receive written approval from Prudential for the program before it begins.

The return to work program may include, but is not limited to, the following services:

- coordination with your Employer to assist you to return to work;

- evaluation of adaptive equipment to allow you to work;

- child care during your return-to-work program;

- vocational evaluation to determine how your disability may impact your employment options;

- job placement services;

- resume preparation;

- job seeking skills training;

83500
COTS-LTD-1005

(S-1)

- retraining for a new occupation; or

- assistance with relocation that may be part of an approved return to work program.

If at any time, you decline to take part in or cooperate in a rehabilitation evaluation/assessment or program that Prudential considers appropriate for your disability and that has been approved by your Doctor, we will cease paying your monthly benefit.

## How Can Prudential's Social Security Claimant Assistance Program Help You With Obtaining Social Security Disability Benefits?

Prudential can arrange for expert advice regarding your Social Security disability benefits claim and assist you with your application or appeal, if you are disabled under the plan.

Receiving Social Security disability benefits may enable:

- you to receive Medicare after 24 months of disability payments;

- you to protect your retirement benefits; and

- your family to be eligible for Social Security benefits.

We can assist you in obtaining Social Security disability benefits by:

- helping you find appropriate legal representation;

- obtaining medical and vocational evidence; and

- reimbursing pre-approved case management expenses.

# Glossary

***Active employment*** means you are working for your Employer for earnings that are paid regularly and that you are either:

- performing the material and substantial duties of your regular occupation, if it is a scheduled work day; or

- capable of performing the material and substantial duties of your regular occupation, if you are not at work due to a non-scheduled work day, holiday, vacation day, excused leave of absence or emergency leave of absence.

You must be working at least 30 hours per week.

Your worksite must be:

- your Employer's usual place of business;
- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or
- a location to which your job requires you to travel.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

***Care*** means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

***Confined or confinement*** for this section means a hospital stay of at least 8 hours per day.

***Contract Holder*** means the Employer to whom the Group Contract is issued.

***Deductible sources of income*** means income from deductible sources listed in the plan which you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

***Disability earnings*** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible as explained in the plan. Salary continuance will not be included as disability earnings since it is not payment for work performed.

***Doctor*** means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

83500
CGL-1007

38                                                              (S-2)(29132-LWDI/LTD2)

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including but not limited to you, your spouse, or a child, grandchild, brother, sister, aunt, uncle, niece, nephew, parent, or grandparent of you or your spouse as a doctor for a claim that you send to us.

*Eligible survivor* means your spouse, if living; otherwise, your children under age 25.

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

*Employee* means a person who is in active employment with the Employer for the minimum hours requirement.

*Employer* means the Contract Holder, and includes any division, subsidiary or affiliate who is reported to Prudential in writing for inclusion under the Group Contract, provided that Prudential has approved such request.

*Employment waiting period* means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan  The period must be agreed upon by the Employer and Prudential.

*Evidence of insurability* means a statement of your medical history which Prudential will use to determine if you are approved for coverage.  Evidence of Insurability will be provided at your own expense.

*Gainful occupation* means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 60?% of your indexed monthly earnings within 12 months of your return to work.

*Gross disability payment* means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

*Indexed monthly earnings* means your monthly earnings adjusted on each July 1 provided you were disabled for all of the 12 months before that date.  Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index.  Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor.  Prudential reserves the right to use some other similar measurement approved by the Commissioner of Insurance of the State of Maryland if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

*Injury* means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness.  Disability must begin while you are covered under the plan.

**Insured** means any person covered under a coverage.

**Law, plan or act** means the original enactment of the law, plan or act and all amendments.

**Layoff or leave of absence** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. But layoff or leave of absence does not mean your normal vacation time, or any period of disability or FMLA leave.

**Material and substantial duties** means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

**Maximum period of payment** means the longest period of time Prudential will make payments to you for any one disability.

**Mental illness** means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive, or bipolar illness, anxiety, somatization, dementia, substance related disorders, and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

**Monthly benefit** means the total benefit amount for which an employee is insured under this plan subject to the maximum benefit.

**Monthly earnings** means your gross monthly income from your Employer as defined in the plan.

**Monthly payment** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**Occupational sickness or injury** means an injury arising out of, or in the course of, any work for wage or profit regardless of employer, or a sickness covered, with respect to such work, by any workers' compensation law, occupational disease law or similar law.

**Part-time basis (STD)** means the ability to work and earn between 20% and 80% of your weekly earnings.

**Part-time basis (LTD)** means the ability to work and earn 20% or more of your indexed monthly earnings.

**Payable claim** means a claim for which Prudential is liable under the terms of the Group Contract.

**Plan** means a line of coverage under the Group Contract.

**Pre-existing condition** means:

- a condition for which you received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medicines or followed treatment recommendation for your condition during the given period of time as stated in the plan; or

83500
CGL-1007

(S-2)(29132-LWDI/LTD2)

- you had symptoms for which an ordinarily prudent person would have consulted a health care provider during the given period of time as stated in the plan.

A pre-existing condition does not include a condition admitted in your application for insurance which was not excluded by a signed waiver rider.

**Recurrent disability** means a disability which is due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

**Regular occupation** means the occupation you are routinely performing when your disability occurs. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

**Retirement plan** means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

**Sickness** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

**We, us, and our** means The Prudential Insurance Company of America.

**Weekly benefit** means the total benefit amount for which an employee is insured under this plan subject to the maximum benefit.

**Weekly earnings** means your gross weekly income from your Employer as defined in the plan.

**Weekly payment** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**You** means a person who is eligible for Prudential coverage.

## RIDER TO BE ATTACHED TO YOUR CERTIFICATE

### NOTICE OF CHANGE

**Covered Classes**  The "Covered Classes" are these Employees of the Contract Holder (and its Associated Companies):  All Employees other than Employees who earn $80,000 or more annually.

**Effective Date of Change**: The first day on or after December 1, 1999 on which you are insured (see the section of your Certificate entitled "When Does Your Coverage Begin"). The section of your Certificate entitled "What If You Are Absent From Work On The Date Your Coverage Would Normally Begin?" applies to this change.

**Group Contract No.**: DG-29132-MD

Your Certificate is changed as follows:

1.  The **Elimination Period** provision, for the **Short Term Disability Plan**, of the **Benefit Highlights** section is replaced by the following:

    **Elimination Period:**  14 days for disability due to sickness;
    14 days for disability due to accident.

    But, the elimination period will end on the day before you are confined as an inpatient in a hospital because of your disability and a room and board charge is made.

    **Benefits begin the day after the Elimination Period is completed.**

2. The **How Long Must You Be Disabled Before Your Benefits Begin**? provision, for the **Short Term Disability Coverage**, of the **Benefit Information** section is replaced by the following:

    ### How Long Must You Be Disabled Before Your Benefits Begin?

    You must be continuously disabled through your *elimination period*. Prudential will treat your disability as continuous if your disability stops for 5 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

    Your elimination period for disability due to an accident which begins while you are covered is 14 days; your elimination period for disability due to a sickness which begins while you are covered is 14 days. But, the elimination period will end on the day before you are confined as an inpatient in a hospital because of your disability and a room and board charge is made.

    *Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

All other provisions in your Certificate remain unchanged.

### THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

83500
CNC 1001

(29132 WDI/LTD2 PERM; Ed. 09-00)